O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER HOLM,<br><br>               Plaintiff,<br><br>    v.<br><br>CITY OF BARSTOW, a<br>municipal corporation;<br>CALEB L. GIBSON,<br>individually and as<br>Chief of Police for the<br>Barstow Police<br>Department; RUDY<br>ALCANTARA, individually<br>and as a Lieutenant for<br>the Barstow Police<br>Department; KEITH LIBBY,<br>individually and as a<br>Sergeant for the Barstow<br>Police Department; and<br>DOES 1 through 100,<br><br>             Defendants. | Case No. EDCV 08-420-VAP<br>(JCx)<br><br>**[Motion filed on June 9,<br>2008]**<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS FIRST<br>AMENDED COMPLAINT** |

Defendants' Motion to Dismiss First Amended Complaint came before this Court for hearing on July 14, 2008. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the

Court GRANTS Defendants' Motion in part and DENIES it in part.

## I. BACKGROUND

**A.   Procedural Background**

Plaintiff Peter Holm filed a Complaint in the California Superior Court for the County of San Bernardino on February 29, 2008.  Defendants filed a Notice of Removal in this Court on March 28, 2008.  On May 19, 2008, Plaintiff filed a First Amended Complaint ("FAC"), alleging the following claims against Defendants City of Barstow (the "City"), Caleb L. Gibson, Rudy Alcantara, and Keith Libby:

(1)   retaliation for whistleblowing, in violation of California Labor Code section 1102.5, against Defendant City;

(2)   retaliation for whistleblowing, in violation of California Government Code section 53298, against Defendants Gibson, Alcantara, and Libby;

(3)   wrongful termination in violation of public policy, against Defendant City;

(4)   civil harassment in violation of California Code of Civil Procedure section 527.6, against all Defendants; and

(5)   violation of 42 U.S.C. section 1983, against all Defendants.

///

2

1    On June 9, 2008, Defendants City, Gibson, Alcantara,

2  and Libby filed a Notice of Motion and Motion to Dismiss

3  First Amended Complaint ("Motion" or "Mot."), together

4  with a Memorandum of Points and Authorities ("Defs.' Mem.

5  P. & A."), and Request for Judicial Notice ("Defs.'

6  RJN").   Plaintiff filed Opposition ("Opp'n") on June 30,

7  2008, and Defendants filed a timely Reply.[1]

8

9  **B.   Factual Background**

10   Plaintiff worked as a police officer for Defendant

11  City's Police Department from June 2001 until April 2007.

12  (FAC ¶¶ 13.)   On or about February 1, 2007, while working

13  as a uniformed patrol officer, Plaintiff responded to the

14  scene of a traffic collision.   (Id. ¶ 14.)   Before

15  arriving at the scene, Plaintiff was informed that the

16  collision involved only property damage, that the cars

17  involved had already been moved out of the street, and

18  that the involved parties would meet Plaintiff in a

19  _____

20    [1]The Court denies Defendants' Request for Judicial
   Notice, which provided (1) excerpts of the Barstow Police
21  Department Policies and Procedures Manual; (2) a redacted
   traffic collision report prepared by Plaintiff; (3) an
22  excerpt of the City of Barstow Personnel Rules; and (4)
   the Memorandum of Understanding between the City of
23  Barstow and the Barstow Police Officer's Association.
   The facts contained in these documents are not "generally
24  known within the territorial jurisdiction of the trial
   court" and are not "capable of accurate and ready
25  determination by resort to sources whose accuracy cannot
   reasonably be questioned."   Fed. R. Evid. 201(b).
26  Moreover, the documents are offered to rebut factual
   assertions made in Plaintiff's Complaint, and the Court
27  cannot consider such documents without converting the
   Motion to one for summary judgment.   Fed. R. Civ. P.
28  12(d).

1  nearby parking lot.  (Id.)  One of the persons involved
2  in the collision was the son-in-law of Defendant Gibson;
3  the other was a female driver.  (Id. ¶ 15.)  At the time,
4  Defendant Gibson was the City's Chief of Police.  (Id. ¶
5  7.)  Pursuant to the Police Department's practice,
6  Plaintiff asked the involved parties to exchange their
7  insurance and driver information.  (Id. ¶ 16.)
8
9      Later that day, Plaintiff returned to the police
10  station, where Defendant Libby, a police sergeant,
11  "confronted" him about the car accident.  (Id. ¶¶ 9, 18.)
12  Libby informed Plaintiff that one of the parties involved
13  in the car accident was Gibson's son-in-law, and directed
14  Plaintiff to "provide preferential treatment and prepare
15  a traffic report on the collision."  (Id. ¶ 18.)
16  Plaintiff prepared a report based, in part, on a diagram
17  of the incident provided by Gibson's son-in-law, and
18  provided it to his supervisor.  (Id. ¶¶ 19-20.)
19  Plaintiff's report concluded that Gibson's son-in-law was
20  at fault for the collision.  (Id. ¶ 19.)  Plaintiff's
21  immediate supervisor approved the report.  (Id. ¶ 20.)
22
23      On or about February 12, 2007, Defendant Libby
24  ordered Plaintiff to change the narrative portion of the
25  traffic report to indicate that Gibson's son-in-law was
26  not at fault.  (Id. ¶ 21.)  Libby also told Plaintiff
27  that Defendant Alcantara, a police lieutenant, had
28

4

1  reviewed the report and determined that Plaintiff's
2  conclusion was wrong. (Id. ¶¶ 8, 21.) Plaintiff refused
3  to change the report, but offered to prepare a
4  supplemental report stating that Libby and Alcantara had
5  ordered him to make the change. (Id. ¶ 23.)  Later that
6  day, Libby told Plaintiff that Libby would do the
7  supplemental report himself, which Plaintiff understood
8  to mean that Libby would complete a report changing the
9  finding of fault from Gibson's son-in-law to the other
10 driver. (Id.)  Plaintiff believes that Defendants Libby
11 and Alcantara made such a change to the police report,
12 and that they did so at the direction of Defendant
13 Gibson. (Id. ¶¶ 22, 25.)

14

15      On or about March 6, 2007, Plaintiff received a
16 "typed statement" in his mail box from the female driver
17 who had been involved in the collision. (Id. ¶ 26.)  The
18 document indicated that the female driver had been
19 interviewed by Defendants concerning the accident, but
20 that Defendants had misrepresented her statements and
21 lied in their report. (Id.)  Plaintiff alleges that
22 Defendants "including, but not limited to, DEFENDANTS
23 LIBBY and ALCANTARA, falsified a traffic investigation
24 follow up and completed a false police report on
25 approximately February 20, 2007, which included a
26 statement attributed to the non-relative [female] driver
27 ///

28

1  in the traffic collision incident, and that statement was
2  false."  (<u>Id.</u> ¶ 27.)

3

4      Plaintiff completed a follow-up report attaching the
5  typewritten statement he had received from the female
6  driver and complained again to Defendants that changing
7  the report was not proper.  (<u>Id.</u> ¶ 28.)  On March 12,
8  2007, Plaintiff filed an internal complaint with the City
9  concerning the falsification of the collision report.
10 (<u>Id.</u> ¶ 30.)  Though Plaintiff was interviewed on March
11 19, 2007, as part of the investigation into his
12 complaints, no further resolution of his complaint has
13 occurred.  (<u>Id.</u> ¶ 31.)

14

15     Defendants retaliated against Plaintiff for his
16 complaints by making threatening statements implying that
17 he would be retaliated against and, on one occasion,
18 requiring Plaintiff to leave a briefing for officers such
19 that he did not receive "critical briefing information
20 necessary for the performance of his duties."  (<u>Id.</u> ¶¶
21 33-38.)  Plaintiff also alleges that he was "unduly
22 scrutinized, followed, and singled out" by Defendant
23 Alcantara during his patrol shift and "denied choice
24 assignments."  (<u>Id.</u> ¶¶ 39-41.)

25

26     On April 3, 2007, Plaintiff was compelled to resign.
27 (<u>Id.</u> ¶ 53.)

28

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S. Ct. 1955, 1964 (2007).  In addition, the Court must accept all material allegations in the complaint -- as well as any reasonable inferences to be drawn from them -- as true.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic, 127 S. Ct. at 1964-65 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id. at 1965.

1   Although the scope of review is limited to the
2   contents of the complaint, the Court may also consider
3   exhibits submitted with the complaint, <u>Hal Roach Studios,</u>
4   <u>Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19
5   (9th Cir. 1990), and "take judicial notice of matters of
6   public record outside the pleadings," <u>Mir v. Little Co.</u>
7   <u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).

8

9                        **III. DISCUSSION**
10  **A.   Claim for violation of 42 U.S.C. section 1983**
11      A public employee may state a claim against a
12  government employer for violation of his First Amendment
13  rights where his protected speech was a "substantial or
14  motivating" factor in the employer's adverse employment
15  action.  <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 973
16  (2003).

17

18      Defendants argue that Plaintiff's claim under 42
19  U.S.C. section 1983 ("section 1983") against the City
20  should be dismissed, because Plaintiff has not identified
21  any policy, custom, or practice giving rise to City
22  liability.  Defendant further contends Plaintiff's
23  section 1983 claims against the individual Defendants
24  should be dismissed, because (1) the individual
25  Defendants are entitled to qualified immunity, and (2)
26  Plaintiff has not identified actions taken by individual
27  Defendants giving rise to liability in their individual
28

capacities.  With respect to Plaintiff's section 1983 claims against both the City and the individual Defendants, the Motion asserts Plaintiff's speech is not entitled to constitutional protection, because it was made in the course of his official duties as a police officer.

### 1.   Protected nature of speech

The Court first addresses whether Plaintiff has pleaded sufficiently that he engaged in speech protected by the First Amendment, because resolving this issue in Defendants' favor would eliminate the need to analyze their remaining arguments.

An employee's speech is protected when he speaks "as a citizen on a matter of public concern." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006.)  The Supreme Court has held, however, that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421.  Defendants argue that Plaintiff's speech was made "in accordance with his duty as a police officer to report on perceived or potential violations of internal police department practices," and therefore is not subject to First Amendment protection.  (Mot. at 20.)

1     The Ninth Circuit, in applying <u>Garcetti</u>, has noted

2  that "an employee's charge of high level corruption in a

3  government agency has all of the hallmarks that we

4  normally associate with constitutionally protected

5  speech." <u>Marable v. Nitchman</u>, 511 F.3d 924, 931 (9th

6  Cir. 2007).  While it can be said that Plaintiff's duties

7  as a police officer required him to report on violations

8  of the law by members of the public, Defendants cannot

9  establish on a Rule 12(b)(6) motion that Plaintiff's

10  duties also required him to "report on perceived or

11  potential violations of internal police department

12  practices."  Mot. at 20; <u>see also</u> <u>Garcetti</u>, 547 U.S. at

13  421 ("The controlling factor . . . is that [plaintiff's]

14  expressions were made pursuant to his duties as a

15  calendar deputy.").  Moreover,  that Plaintiff expressed

16  his speech on the subject matter of his employment, and

17  did so inside the office rather than publicly, is not

18  dispositive.  <u>Garcetti</u>, 547 U.S. at 420-21.

19

20     Accordingly, the Court rejects Defendants' argument

21  that Plaintiff's speech was not protected because it was

22  made in his official capacity.

23

24     **2.  <u>Monell</u> liability**

25     The Supreme Court has held that a local government

26  can be liable under section 1983 for its policies that

27  result in constitutional torts.  <u>Monell v. Dep't of Soc.</u>

28

1  <u>Servs.</u>, 436 U.S. 658, 694 (1978).  A suit against
2  individual defendants in their official capacity is the
3  same as a suit against the local government entity
4  itself.  <u>McMillian v. Monroe County</u>, 520 U.S. 781, 785
5  n.2 (1997).  <u>Monell</u> liability may be established in any
6  one of the following three ways:

7      (1) by showing a longstanding practice or custom
8      which constitutes the standard procedure of the local
9      governmental entity; (2) by showing that the
10     decision-making official was, as a matter of state
11     law, a final policymaking authority whose edicts or
12     acts may fairly be said to represent official policy
13     in the area of decision; or (3) by showing that an
14     official with final policymaking authority either
15     delegated that authority to, or ratified the decision
16     of, a subordinate."

17 <u>Menotti v. City of Seattle</u>, 409 F.3d 1113, 1147 (9th Cir.
18 2005) (internal quotations omitted) (quoting <u>Ulrich v.</u>
19 <u>City and County of San Francisco</u>, 308 F.3d 968, 985-86
20 (9th Cir. 2002)).

21

22     Here, Plaintiff argues that he has pled sufficiently
23 that Defendant Gibson, the City's Chief of Police, was an
24 official with final policy-making authority whose acts
25 may be considered to represent official City policy
26 concerning personnel decisions.  (Opp'n at 6-7; FAC ¶¶ 7,
27 106, 108.)   Defendants have not advanced any legal
28

argument in their Motion to refute Plaintiff's claim.
Moreover, Defendants have not attempted to show that
Defendant Gibson was an official with discretion in the
exercise of certain personnel decisions, rather than an
official with final policymaking authority.  The Supreme
Court has recognized that the exercise of such discretion
would preclude liability under Monell.  See Ulrich, 308
F.3d 968, 985 ("The fact that a particular official -
even a policymaking official - has discretion in the
exercise of particular functions does not, without more,
give rise to municipal liability based on an exercise of
that discretion.  The official must also be responsible
for establishing final government policy respecting such
activity before the municipality can be held liable.")
(quoting Pembaur v. City of Cincinnati, 475 U.S. 469,
482-83 (1986) (plurality)).

     Plaintiff therefore has alleged sufficiently that
Defendant Gibson's acts of retaliation should be
considered to represent official City policy giving rise
to liability under Monell.

     **2.   Liability of individual Defendants**

     The individual Defendants argue that they are
shielded from suit by the doctrine of qualified immunity.
(Mot. at 17-18.)  Public officials sued in their
individual capacities are "shielded from liability for

1 civil damages insofar as their conduct does not violate

2 clearly established statutory or constitutional rights of

3 which a reasonable person would have known."  Harlow v.

4 Fitzgerald, 457 U.S. 800, 818 (1982).

5

6     Defendants contend qualified immunity is "almost

7 always appropriate" in section 1983 cases alleging a

8 violation of the plaintiff's First Amendment rights.

9 (Mot. at 18.)  According to Defendants, the "fact-

10 sensitive, context-specific balancing of competing

11 interests" mandated by Supreme Court precedent in First

12 Amendment cases results in few situations where a

13 defendant has violated a "clearly established" right.

14 (Id.)  Defendants refer to the balancing test set forth

15 in Pickering v. Board of Education, in which the Supreme

16 Court called for a balance between "the interests of the

17 [employee], as a citizen, in commenting on matters of

18 public concern and the interest of the State, as an

19 employer, in promoting the efficiency of the public

20 services it performs through its employees."  391 U.S.

21 563, 568 (1968).

22

23     Here, however, Plaintiff has alleged that he

24 protested when asked to falsify a traffic report, and

25 then complained again when he learned that Defendants had

26 changed the traffic report.  (FAC ¶¶ 23, 28.)  Plaintiff

27 further filed an internal complaint with the City.  (Id.

28

1   ¶ 29.)   In March 2007, when Plaintiff made his

2   complaints, it was clearly established that the airing of

3   such concerns about official corruption were protected by

4   the First Amendment, and Defendants have not offered any

5   countervailing concern about the efficient operation of

6   the Police Department to be balanced against that right.

7   See Keyser v. Sacramento City Unified School District,

8   265 F.3d 741, 748 (9th Cir. 2001) ("There is a series of

9   cases in the Ninth Circuit establishing that the public's

10  interest in learning about illegal conduct by public

11  officials . . . outweighs a state employer's interest in

12  avoiding a mere potential disturbance to the workplace.")

13  (emphasis in original).   Defendants therefore have not

14  established that they were entitled to qualified immunity

15  based on the facts alleged in the FAC.

16

17      Finally, Defendants contend Plaintiff has not pled

18  sufficiently the actions taken by each of the individual

19  Defendants, nor has he established that such actions

20  would deter a reasonable employee from engaging in

21  constitutionally protected speech.   (Mot. at 15-16.)

22  This argument is not persuasive.   Plaintiff has set forth

23  the following particular actions taken by each of the

24  individual Defendants: (1) that Defendant Alcantara

25  stated Plaintiff's handling of the traffic report and

26  Plaintiff's complaints "were going to be shoved up [his]

27  ass," (FAC ¶ 33); (2) that Defendant Gibson displayed his

28

14

anger toward Plaintiff during a meeting in front of other City personnel and communicated to Plaintiff about Plaintiff's complaints, (FAC ¶ 34); (3) that Defendant Libby forced Plaintiff to leave a briefing while other officers remained, resulting in Plaintiff not "receiv[ing] critical briefing information necessary for the performance of his duties," (FAC ¶ 38); and (4) Defendant Alcantara's undue scrutiny and following of Plaintiff during Plaintiff's patrol shift, (FAC ¶ 39).

"To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind.  Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden." Coszalter, 320 F.3d at 975.  The inquiry is focused on whether the alleged acts of retaliation would "chill the exercise" of First Amendment rights.  Id. at 974-75.  For example, an allegation that the plaintiff was precluded from attending certain meetings and participating as an evaluator in training exercises was considered sufficient to show adverse employment actions.  Id. (citing Thomas v. Carptenter, 881 F.2d 828, 829 (9th Cir. 1989)). Plaintiff's allegations concerning the acts of Defendants, as set forth in the preceding paragraph, therefore are sufficient to show adverse employment actions.

1    Accordingly, the Court denies Defendants' Motion to
2  dismiss Plaintiff's claims against the City and the
3  individual Defendants under section 1983.

4

5  **B.   Claim for Retaliation under Labor Code § 1102.5**
6    The California Labor Code provides:
7    An employer may not retaliate against an employee for
8    disclosing information to a government or law
9    enforcement agency, where the employee has reasonable
10    cause to believe that the information discloses a
11    violation of state or federal statute, or a violation
12    or noncompliance with a state or federal rule or
13    regulation.
14  Cal. Labor Code § 1102.5(b).  To establish a prima facie
15  case under section 1102.5, an employee must show "(1)
16  that he engaged in protected activity, (2) that he was
17  thereafter subjected to an adverse employment action by
18  his employer, and (3) that there was a causal link
19  between the protected activity and the adverse employment
20  action."  Love v. Motion Indus., Inc., 309 F. Supp. 2d
21  1128, 1134 (N.D. Cal. 2004) (applying California law).

22

23    **1.   Allegation of protected activity**
24    Defendant argues that Plaintiff has not alleged he
25  disclosed "a violation of state or federal statute, or a
26  violation or noncompliance with a state or federal rule
27

28

1  or regulation," as required by section 1102.5.  (Mot. at
2  5-6.)

3

4       The FAC alleges that Plaintiff disclosed information
5  that he "had reasonable cause to believe disclosed
6  violations of state or federal statutes, including but
7  not limited to Penal Code section 118.1 and other
8  statutes concerning the filing of false police/official
9  reports, and claims of police corruption and abuse of
10 authority." [FAC ¶ 59 (emphasis added).]  Defendant
11 contends this allegation does not state a claim for
12 relief, because Penal Code section 118.1 addresses the
13 filing of a false report "regarding the commission of any
14 crime or any investigation of any crime."  Cal. Penal
15 Code § 118.1.  As the report at issue here concerned a
16 traffic accident, Defendant argues that Plaintiff did not
17 disclose conduct in violation of state law.  (Mot. at 6.)
18 Penal Code section 118.1 is not the only violation of law
19 Plaintiff alleges he disclosed, however.  Defendant has
20 not cited any authority requiring a plaintiff to cite
21 specific statutory provisions the plaintiff believed had
22 been violated.  In the absence of such authority, the
23 Court finds that Plaintiff has sufficiently pleaded that
24 he made a disclosure protected by section 1102.5 under
25 the notice pleading standard of the Federal Rules of
26 Civil Procedure.

27

28

1    The Court therefore denies Defendant's Motion to
2 dismiss Plaintiff's claim under section 1102.5 to the
3 extent it relies on this ground.

4

5    **2.   Adverse employment action**

6    Defendant next argues that Plaintiff has not pled
7 sufficient facts to show he suffered adverse employment
8 action, as required to make a prima facie case.  (Mot. at
9 7-8.)  The FAC alleges that after making protected
10 disclosures, Defendants purportedly "ostracized"
11 Plaintiff and prevented him from receiving "critical
12 briefing information for the performance of his duties."
13 (FAC ¶ 38.)  Plaintiff also alleges that he was "denied
14 choice assignments," (id. ¶ 40), and that certain
15 Defendants made statements indicating there would be
16 reprisal for his disclosure.  (Id. ¶¶ 33-35.)

17

18    The standard for determining whether Defendants'
19 conduct constituted an adverse employment action for
20 purposes of section 1102.5 is the same standard used in
21 cases under the California Fair Employment and Housing
22 Act ("FEHA").  Patten v. Gran Joint Union High School
23 Dist., 134 Cal. App. 4th, 1378, 1387 (2005).  Under FEHA,
24 an adverse employment action for retaliation purposes is
25 one that "materially affect[s] the terms and conditions
26 of employment."  Id. at 1387 (citing Yanowitz v. L'Oreal
27 USA, Inc., 36 Cal. 4th 1028, 1036, 1050-51 (2005)).

28

"Minor or relatively trivial adverse actions by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee do not materially affect the terms or conditions of employment."  Id. (citing Yanowitz, 36 Cal. 4th at 1054).

Here, Plaintiff worked as a police officer and alleges that he was retaliated against, in part, by being prevented from "receiv[ing] critical briefing information necessary for the performance of his duties."  In light of the safety concerns faced by any police officer, the Court finds this allegation, in connection with the other allegations of the FAC, to state sufficiently a claim of adverse employment action.  It cannot be said as a matter of law that Plaintiff's allegations are insufficient to show a material effect on the terms and conditions of his employment.

The Court therefore denies Defendant's Motion to dismiss Plaintiff's claim under section 1102.5 to the extent it relies on this ground.

### 3.   Exhaustion of administrative remedies

The FAC alleges that Plaintiff "filed/advised the California Labor Commission, Division of Labor Standards Enforcement (DLSE) of his complaints."  (Id. ¶ 55.)  The

DLSE "advised" Plaintiff that it did not have
jurisdiction to investigate his claim and that he was not
required to exhaust his claims with the DLSE.  (<u>Id.</u>)

     Defendants argue that Labor Code section 98.7
requires Plaintiff to exhaust his claim under section
1102.5 with the Labor Commissioner before bringing suit.
(Mot. at 8-9.)  Having failed to do so, Defendants
contend, Plaintiff's claim under section 1102.5 should be
dismissed.  The authorities Defendants cite are not
persuasive authority in support of this proposition,
however.

     Labor Code section 98.7 provides that a person "who
believes that he or she has been discharged or otherwise
discriminated against in violation of any law under the
jurisdiction of the Labor Commissioner may file a
complaint with the division within six months after the
occurrence of the violation."  Cal. Labor Code § 98.7(a).
No California state court appears to have addressed
squarely whether section 98.7(a) requires the filing of a
complaint with the DLSE before resort to the courts.

     Another federal district court has found that section
98.7 does require exhaustion of a claim under section
1102.5.  <u>See</u> <u>Neveu v. City of Fresno</u>, 392 F. Supp. 2d
1159, 1179-80 (E.D. Cal. 2005).  In reaching this

conclusion, Neveu relied in part on a California Supreme
Court decision, Campbell v. Regents of the University of
California, 35 Cal. 4th 311 (2005). Id. at 1180.
Campbell, however, addressed only whether the plaintiff
was required to "exhaust university internal
administrative remedies before filing suit" under Labor
Code section 1102.5.  35 Cal. 4th at 317.  That decision
therefore did not address exhaustion under section 98.7.

Defendants also cite Gutierrez v. RWD Technologies,
Inc., 279 F. Supp. 2d 1223, 1226 (E.D. Cal. 2003), to
support their argument that section 98.7 required
exhaustion of Plaintiff's claim under section 1102.5.  In
Gutierrez, the court found the section 98.7 exhaustion
procedure applicable to a claim brought under Labor Code
section 230, which prohibits discrimination against an
employee for taking time off from work to serve as a
juror.  Id. at 1228; Cal. Labor Code § 230(a).  As noted
in Gutierrez, however, section 230 "explicitly refers to
the administrative remedies set forth in section 98.7."
Id. at 1225 n.2; Cal. Labor Code § 230(f)(1).  The
provision that Plaintiff sues under does not make such a
reference to section 98.7.  Cal. Labor Code § 1102.5.

Defendants' reliance on Neveu, Campbell, and
Gutierrez therefore is unavailing.  Moreover, in a case
that neither side has cited, the California Court of

21

1 Appeal found that section 98.7 did not require a
2 plaintiff to exhaust through the Labor Commissioner a
3 claim brought under section Labor Code section 1102.1.
4 <u>Murray v. Oceanside Unified Sch. Dist.</u>, 79 Cal. App. 4th
5 1338, 1359 (2000).  As with the Labor Code provision
6 under which Plaintiff sues, the provision at issue in
7 <u>Murray</u>, section 1102.1, did not include an express
8 requirement of exhaustion through the Labor Commissioner
9 under section 98.7.  <u>Id.</u> at 1359; <u>see also</u> <u>Gutierrez</u>, 279
10 F. Supp. 2d at 1225 n.2.  The Court therefore finds
11 <u>Murray</u> to be more persuasive authority and rejects
12 Defendants' argument that Plaintiff has failed to exhaust
13 his administrative remedies as required by Labor Code
14 section 98.7.[2]

15

16 **C.   Claim for retaliation under Government Code § 53298**

17      The California Government Code prohibits a local
18 agency from "tak[ing] a reprisal action against any
19 employee" who files a complaint under section 53297.
20 Cal. Gov't Code § 53298(a).  The FAC alleges that
21 Plaintiff made a written complaint on June 22, 2007, and
22 that Defendants took reprisal actions against him as a
23 result.  (FAC ¶¶ 75-77.)
24 ///

25

26 _____

27      [2]Plaintiff separately alleges he filed a claim for
damages pursuant to the California Government Code on
July 19, 2007, (FAC ¶ 56), and Defendants make no
28 argument concerning such filing.

1        As Defendants point out, however, Plaintiff avers

2    that he resigned his employment with the City on April 3,

3    2007.  (FAC ¶ 53; Mot. at 11.)  Plaintiff's claim under

4    section 53298 therefore alleges reprisal for his filing

5    of a complaint after he resigned his employment.  As a

6    result, Plaintiff cannot claim that Defendants took a

7    "reprisal action against [an] employee."  Cal. Gov't Code

8    § 53298(a).

9

10       Plaintiff argues in Opposition that he also "formally

11   complained to Ms. Eileen Martin at Defendant's Human

12   Resources" on March 12, 2007.  (Opp'n at 12.)  The FAC

13   does not allege, however, that this March 2007 complaint

14   forms a basis for his claim under section 53297.  In any

15   event, Plaintiff also does not allege or argue that he

16   made the March 2007 complaint under the penalty of

17   perjury, as required for a suit under section 53298.  See

18   Cal. Gov't Code § 53297(d) (requiring complaints under

19   the whistleblowing statute to be made under penalty of

20   perjury).

21

22       Accordingly, the Court grants Defendants' Motion to

23   dismiss Plaintiff's Second claim for violation of

24   Government Code section 53298.  Though Plaintiff requests

25   leave to amend this claim, (Opp'n at 12:22), he has not

26   offered any additional facts that, if pled, would state a

27   claim for relief.

28

**D.   Claim for Wrongful Termination**

Defendants argue that Plaintiff's claim for wrongful termination in violation of public policy must be dismissed, because he has not pled facts showing "intolerable and discriminatory work conditions."  (Mot. at 11.)  Defendants further contend Plaintiff has not pleaded Defendant City's knowledge of any such intolerable conditions.  (<u>Id.</u> at 13.)  Finally, Defendants contend Plaintiff has failed to allege that his termination violated any fundamental public policy.  (<u>Id.</u> at 11.)

Here, Plaintiff alleges that he was "compelled to resign" from his job and therefore pleads his claim under a theory of constructive discharge.  <u>Turner v. Anheuser-Busch, Inc.</u>, 7 Cal. 4th 1238, 1244-45 (1994). "In order to establish a constructive discharge, an employee must plead and prove . . . that <u>the employer either intentionally created or knowingly permitted</u> working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign."  <u>Id.</u> at 1251 (emphasis added).

Plaintiff has not pled sufficient facts alleging Defendant City's intentional creation or knowledge of the

1 allegedly intolerable working conditions.  The FAC

2 alleges that Plaintiff reported his concerns to Defendant

3 City on March 12, 2007.  (FAC ¶ 30.)  It was only after

4 Plaintiff reported this concern, however, that he alleges

5 he suffered the retaliatory work conditions resulting in

6 his resignation on April 3, 2007.  (FAC ¶¶ 33-41, 53.)

7 Plaintiff therefore has not pled any facts showing that

8 he reported the intolerable working conditions occurring

9 in March and April to Defendant City, or that the City

10 otherwise knowingly permitted the work conditions he

11 alleges were intolerable.[3]  <u>Turner</u>, 7 Cal. 4th at 1250

12 ("requiring employees to notify someone in a position of

13 authority" of the intolerable conditions).

14

15     Accordingly, the Court grants Defendants' Motion and

16 dismisses Plaintiff's claim for wrongful termination in

17 violation of public policy without considering their

18 remaining arguments.  Though Plaintiff requests leave to

19 amend this claim, (Opp'n at 11:20-21), he has not offered

20 any additional facts that, if pled, would state a claim

21 for relief.

22

23                    **IV. CONCLUSION**

24     For the foregoing reasons, the Court GRANTS

25 Defendants' Motion to Dismiss in part and DENIES it in

26 _____

27     [3]Plaintiff's separate allegation that he filed a
written complaint on June 22, 2007, concerns an action he

28 took after he had resigned his employment.  (FAC ¶ 75.)

Case 5:08-cv-00420-VAP-JC   Document 31   Filed 07/29/08   Page 26 of 26   Page ID #:377

part.  Plaintiff's claims for violation of California

Government Code section 53298 and for wrongful

termination in violation of public policy are dismissed

without leave to amend.


Dated: July 29, 2008

VIRGINIA A. PHILLIPS
United States District Judge