O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PETER HOLM, | ) | Case No. EDCV 08-420-VAP (JCx) |
| Plaintiff, | ) ) | **[Motion filed on August 21, 2008]** |
| v. | ) ) | |
| CITY OF BARSTOW, a municipal corporation; CALEB L. GIBSON, individually and as Chief of Police for the Barstow Police Department; RUDY ALCANTARA, individually and as a Lieutenant for the Barstow Police Department; KEITH LIBBY, individually and as a Sergeant for the Barstow Police Department; and DOES 1 through 100, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ORDER GRANTING DEFENDANT HOLM'S MOTION TO DISQUALIFY COUNSEL STEVEN BROCK AND THE LAW FIRM LACKIE, DAMMEIER & MCGILL APC** |
| Defendants. | ) ) | |

Defendant Libby's Motion to Disqualify Counsel Steven Brock and the law firm Lackie, Dammeier & McGille APC came before the Court for hearing on September 15, 2008. The parties chose not to advance arguments at the hearing, and submitted on the Court's tentative ruling to

grant the Motion.  After considering all papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

On February 28, 2008, Plaintiff Peter Holm filed his Complaint ("Compl.") in the California Superior Court for the County of San Bernardino, naming as Defendants the City of Barstow and three individual defendants, including Keith Libby ("Libby"), both individually and as the Sergeant for the Barstow Police Department. Plaintiff alleged the following claims: (1) "whistleblower retaliation," Cal. Lab. Code § 1102.5; (2) "whistleblower retaliation," Cal. Gov. Code § 53298; (3) wrongful termination in violation of public policy; (4) civil harassment; and (5) violation of 42 U.S.C. § 1983. Defendants removed the case to the U.S. District Court on March 28, 2008 on the basis of federal question jurisdiction, 28 U.S.C. § 1331.

On August 21, 2008, Libby filed a motion to disqualify counsel Steven Brock and the law firm of Lackie, Dammeier & McGill APC ("Mot."), the declaration of Keith D. Libby ("Libby Decl."), and the Declaration of G. Arthur Meneses ("Meneses Decl.").  Plaintiff filed his Opposition ("Opp'n") on August 29, 2008 and attached the Declarations of Steven J. Brock ("Brock Decl.") and Dieter Dammeier ("Dammeier Decl.").  Libby filed his

reply on September 9, 2008, as well as the Declaration of
G. Arthur Meneses ("Meneses Reply Decl.") and objections
to the Dammeier and Brock Declarations.

## II. Libby's Evidentiary Objections

Libby filed several evidentiary objections to the
Brock and Dammeier Declarations.

### A.   Objections to Brock Declaration

In his first objection, Libby objects to lines 1-4,
26-28 of ¶ 19 of Brock's declaration, regarding the facts
underlying Libby's 2003 case, on the grounds of: (1)
"lack of foundation, including failure to demonstrate
personal knowledge;" (2) "speculative;" (3) "conclusory;"
and, (4) "irrelevant and immaterial."  The Court
overrules this objection.

In his second objection, Libby objects to lines 8-17
of ¶ 28 of Brock's declaration, which elaborate on
Lackie's legal field of specialization, on the grounds
of: (1) "argumentative;" (2) "conclusory;" (3) "improper
legal conclusion;" and (4) "lack of foundation, including
failure to demonstrate personal knowledge."  The Court
sustains this objection.

///
///

In his third objection, Libby objects to lines 18-26 of ¶ 29 of Brock's declaration, which recount Lackie's legal experience, on the grounds of: (1) "argumentative;" (2) "conclusory;" (3) "improper legal conclusion;" and (4) "lack of foundation, including failure to demonstrate personal knowledge."  The Court sustains this objection.

In his fourth objection, Libby objects to lines 1-4, 27-28 of ¶ 30 of Brock's declaration, which states the prejudice to Plaintiff if Lackie is disqualified, on the grounds of: (1) "argumentative;" (2) "conclusory;" (3) "improper legal conclusion;" and (4) "lack of foundation, including failure to demonstrate personal knowledge." The Court sustains this objection.

In his fifth objection, Libby objects to line 5 of ¶ 31 of Brock's declaration, which states that Libby is not a current client of Lackie's, on the grounds of: (1) "argumentative;" (2) "improper legal conclusion;" (3) "lack of foundation, including failure to demonstrate personal knowledge."  The Court overrules this objection.

In his sixth objection, Libby objects to lines 14-18 of ¶ 33 of Brock's declaration, which states that Lackie does not represent Libby on any matter through the Legal Defense Fund, on the grounds of: (1) "improper legal conclusion;" (2) "argumentative;" (3) "lack of

foundation, including failure to demonstrate personal knowledge."  The Court overrules this objection.

**B.   Objections to Dammeier Declaration**

In his first objection, Libby objects to lines 19-21 of ¶ 6 of Dammeier's declaration, which state Dammeier did not possess confidential information regarding Libby's 2003 case, on the grounds of: (1) "irrelevant and immaterial;" (2) "lack of foundation, including failure to demonstrate personal knowledge;" and, (3) "improper legal conclusion."  The Court overrules this objection.

In his second objection, Libby objects to lines 22-24 of ¶ 7 of Dammeier's declaration, which state that he had spoken with Libby in the past, on the grounds of: (1) "irrelevant;" and (2) "lack of foundation, including failure to demonstrate personal knowledge...."  The Court overrules this objection.

In his third objection, Libby objects to lines 25-27 of ¶ 8 of Dammeier's declaration, which state Mr. Brock did not have contact with Libby's former counsel at Lackie, on the grounds of: (1) "lack of foundation, including failure to demonstrate personal knowledge;" (2) "improper legal conclusion;" (3) "speculative;" and, (4) "argumentative."  The Court overrules this objection.
///

1   In his fourth objection, Libby objects to lines 1-6

2   of ¶ 9 of Dammeier's declaration, which state that

3   Dammeier is unaware of the facts or legal issues

4   regarding Libby, on the grounds of: (1) "irrelevant;" (2)

5   "lack of foundation, including failure to demonstrate

6   personal knowledge...;" (3) "argumentative;" and, (4)

7   "improper legal conclusion."  The Court overrules this

8   objection.

9

10   In his fifth objection, Libby objects to line 9 of ¶

11   11 of Dammeier's declaration, which states that Libby is

12   not a current client of Lackie's, on the grounds of: (1)

13   "argumentative;" (2) "improper legal conclusion;" and (3)

14   "lack of foundation, including failure to demonstrate

15   personal knowledge."  The Court overrules this objection.

16

17   In his sixth objection, Libby objects to lines 18-22

18   of ¶ 13 of Dammeier's declaration, which states that

19   Lackie does not represent Libby on any matter through the

20   Legal Defense Fund, on the grounds of: (1) "improper

21   legal conclusion;" (2) "argumentative;" (3) "lack of

22   foundation, including failure to demonstrate personal

23   knowledge."  The Court sustains this objection.

24

25   In his seventh objection, Libby objects to lines 5-13

26   of ¶ 15 of Dammeier's declaration, which elaborates on

27   Lackie's legal field of specialization, on the grounds

28

of: (1) "argumentative;" (2) "conclusory;" (3) "improper legal conclusion;" and (4) "lack of foundation, including failure to demonstrate personal knowledge."  The Court sustains this objection.

In his eighth objection, Libby objects to lines 14-19 of ¶ 16 of Dammeier's declaration, which states the prejudice to Plaintiff if Lackie is disqualified, on the grounds of: (1) "argumentative;" (2) "conclusory;" (3) "improper legal conclusion;" and (4) "lack of foundation, including failure to demonstrate personal knowledge." The Court sustains this objection.

### III. DISCUSSION

The Central District of California has adopted the Rules of Professional Conduct of the State Bar of California, and the decisions construing them, as the governing standards of professional conduct.  <u>See</u> L.R. 83-3.1.2.

**A.   California Rule of Professional Conduct 3-310(C)**

Under Rule of Professional Conduct 3-310(C), "[a] member shall not, without the informed written consent of each [current] client: ... (2) [a]ccept or continue representation of more than one client in a matter in which the interests of the clients actually conflict...." Even if the simultaneous representations are unrelated,

1  disqualification may be required.   See Flatt v. Superior
2  Court, 9 Cal.4th 275, 284 (1994); Fremont Indem. Co. v.
3  Fremont Gen. Corp., 143 Cal. App. 4th 50, 64 (2006);
4  Truck Ins. Exchg. v. Fireman's Fund Ins. Co., 6 Cal. App.
5  4th 1050, 1060 (1992).

6

7      The parties dispute whether Libby is a current client
8  of Lackie, Dammeier & McGill APC ("Lackie").   Libby
9  claims he is presently a client of the firm because, as a
10 Barstow police officer, he pays dues to the Barstow
11 Police Officer's Association, which uses the dues paid to
12 obtain legal representation for its members through the
13 Legal Defense Fund of the Police Officer's Research
14 Association of California, and Lackie is a panel law firm
15 that routinely provides services to members of the
16 Association.   (Mot. at 7, 8; see also Libby Decl. at ¶ ¶
17 2, 9.)   Libby is not currently using the firm's legal
18 services but he "continues to be entitled to
19 representation by Lackie through the Legal Defense Fund."
20 (Mot. at 8.)   Lackie claimS that Libby is not a client at
21 the present time and that the firm "does not have a
22 current attorney-client relationship, a retainer, or any
23 other obligation to represent Libby."   (Opp'n at 13.)

24

25     When there is conflicting evidence about whether an
26 attorney-client relationship exists, the Court must
27 evaluate the evidence of the factual basis for the
28

1  determination.  See Chapman v. Superior Court, 130 Cal.

2  App. 4th 261, 272 (2005).  Evaluating the evidence in the

3  record here, the Court finds Libby's belief that he is

4  presently a client of Lackie's an unreasonable one.  As a

5  dues-paying member of the Barstow Police Officer's

6  Association, Libby has not sought legal advice and

7  secured that advice from Lackie.  See Gulf Ins. Co. v.

8  Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone,

9  79 Cal. App. 4th 114, 126 (2000).  Relying only on his

10 continued payment of dues to the Barstow Police Officer's

11 Association, Libby has not presented enough evidence to

12 demonstrate that he has a continuing attorney-client

13 relationship with Lackie.  Thus, the Court finds this is

14 not a basis upon which Lackie should be disqualified.

15

16 **B.   California Rule of Professional Conduct 3-310(E)**

17      Under Rule of Professional Conduct 3-310(E), "[a]

18 member shall not, without the informed written consent of

19 the client or former client,[1] accept employment adverse

20 to the client or former client where, by reason of the

21 representation of the client or former client, the member

22 has obtained confidential information material to the

23 employment."

24 ///

25 ///

26 _____

27      [1] It is undisputed that Libby did not consent in
writing or otherwise to Lackie's representation of Holm
28 in the present action.  (Mot. at 5; Libby Decl. ¶ 11.)

In California, "[a] former client may seek to disqualify a former attorney from representing an adverse party by showing the former attorney actually possessed confidential information adverse to the former client. However, it is well settled actual possession of confidential information need not be proved in order to disqualify the former attorney.  It is enough to show a 'substantial relationship' between the former and current representation.  If the former client can establish the existence of a substantial relationship between representations, the courts will conclusively presume the attorney possesses confidential information adverse to the former client." H. F. Ahmanson & Co. v. Salomon Brothers, Inc., 229 Cal. App. 3d 1445, 1452 (1991); see also Flatt v. Superior Court, 9 Cal. 4th 275, 283 (1994) ("Where the requisite substantial relationship . . . can be demonstrated, access to confidential information . . . is *presumed* and disqualification . . . is mandatory."). Disqualification on this basis "extends vicariously to the entire firm." Flatt, 9 Cal. 4th at 283-84.

**1.  Substantial Relationship Test**

The "substantial relationship" test focuses on the "similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases." H.F. Ahmanson & Co., 229 Cal. App. 3d at 1455 (quoting Silver Chrysler

1   Plymouth, Inc. v. Chrysler Motor Corp., 518 F.2d 751, 760

2   (2d Cir. 1975) (Adams, J., concurring)); see also

3   Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft,

4   LLP, 69 Cal. App. 4th 223, 234 (1999).  "If the former

5   client can establish the existence of a substantial

6   relationship between representations, the court will

7   conclusively presume the attorney possesses confidential

8   information adverse to the former client."  H.F. Ahmanson

9   & Co., 229 Cal. App. 3d at 1452; see also In re County of

10  Los Angeles, 223 F.3d 990, 994 (9th Cir. 2000) ("If there

11  is a reasonable probability that confidences were

12  disclosed [in an earlier representation] which would be

13  used against the client in [a] later, adverse

14  representation, a substantial relationship between the

15  two cases is presumed." (quoting Trone v. Smith, 621 F.2d

16  994, 998 (9th Cir. 1980).); Styles v. Mumbert, 164 Cal.

17  App. 4th 1163, 1167 (2008); Fox Searchlight Pictures,

18  Inv. v. Paladino, 89 Cal. App. 4th 294, 300 (2001).

19

20      Libby argues that the 2003 case in which he was

21  represented by Lackie is substantially related to the

22  current action, where Lackie represents Plaintiff Holm,

23  who is suing Libby.  According to Libby, "[t]he matters

24  are substantially related because they both involve the

25  alleged application of the City of Barstow's policies,

26  practices and procedures in responding to Barstow Police

27  Officers' exercise of free speech regarding alleged

28

11

wrongful conduct by senior management in the Barstow

Police Department."  (Reply at 1.)  Lackie argues the two

cases are unrelated and do not arise from the same

events.  (Opp'n at 12.)

It is undisputed that Plaintiff Holm's case does not

arise from the identical facts or legal issues as did

Libby's former case.  The cases, however, do share

similar facts and legal claims.  (See Def.'s Ex. A;

Compl.)

### a) Factual Similarities

In 2003, Libby retained Lackie to represent him in

his case against the Barstow Police Department and the

City of Barstow.  (Libby Decl. at ¶ 7; Def.'s Ex. A.)

Libby claimed that the defendants had "wrongfully

retaliated against [him] and took action to suppress

[his] civil rights as a result of statements [he] made on

behalf of the Barstow Police Officers Association."

(Libby Decl. at ¶ 8.)  Specifically, Libby alleged that

he had "distributed a confidential memorandum to members

of the Barstow Police Officers Association" that

expressed concerns about the "temporary appointment of

rank and file officers [who had not received adequate

training] to the position of supervisor in the absence of

an on duty corporal or sergeant."  (Def.'s Ex. A ¶ 12.)

For this act of "inciting insubordination," Libby was

1  disciplined and allegedly suffered "various acts of
2  intimidation, reprisal, retaliation, suppression and
3  extreme exercise;" that discipline was the basis for
4  Libby's claims.  (Id. at ¶¶ 13, 22)

5

6     The facts of Holm's claims differ somewhat.  Holm
7  alleges he wrote a report after a traffic accident
8  involving the Chief of Police's son-in-law concluding the
9  son-in-law was at-fault for the accident.  (Compl. at ¶¶
10  11-13.)  Allegedly, Holm's supervisors, including Libby,
11  repeatedly instructed Holm to change his report to
12  reflect that the Chief's son-in-law was not at fault.
13  (Id. at ¶¶ 15-26.)  Holm allegedly stated his objections
14  to changing the report but the changes were made anyway.
15  (Id. at ¶ 21.)  Holm filed an internal complaint with the
16  City of Barstow regarding the incident and allegedly has
17  suffered negative consequences, including harassment, as
18  a result.  (Id. at ¶¶ 27-39.)

19

20     The facts of Libby's claims and those of Holm are
21  similar.  Both allegedly arise out of a police officer's
22  alleged exercise of his First Amendment right to free
23  speech.  Furthermore, both arise from alleged wrongful
24  discipline and retaliation imposed as a result of the
25  officer's exercise of his free speech rights.  Finally,
26  and most critically, both Holm's case and Libby's case
27  involve the same law enforcement agency, the City of
28

Barstow's police department.   "The facts of cases are
never entirely alike" but these facts are sufficiently
similar to satisfy the fact prong of the substantially
related test.   See Morrison Knudsen Corp., 69 Cal. App.
4th at 235 (substantial relationship found between two
successive cases about soil issues: (1) former case
concerned with "placement of a clay pad in an unstable
location" and (2) present case about "whether corrosive
sand could be used above metal culverts that pass under a
roadway.").

### b) Legal Similarities

    Libby's 2003 case sought damages and injunctive
relief for injury suffered "as a result of the wrongful
retaliation for lawful exercise of individual civil
rights and liberties, free expression and association,
labor organizational, social, and political activities."
(Def's Ex. A.)   In this case, Holm seeks money damages
and injunctive relief for the alleged retaliation,
harassment, and wrongful termination he suffered because
he exercised his free speech rights.   (See Compl.)   These
claims are nearly identical, and both assert the alleged
wrongdoer is the same entity.   Thus, the Court finds the
legal claims satisfy the similarity prong of the
substantial relationship test.

///

///

1          **c) Attorney Involvement**

2          Lackie argues that its former representation of Libby

3   resulted in no confidential information being conveyed to

4   the firm and that no information adverse to Libby was

5   communicated either.  (Opp'n at 9.)  Alternatively, the

6   firm argues that, if confidential information was

7   imparted to the attorneys representing Libby in 2003, it

8   was not conveyed to Plaintiff Holm's current lawyer,

9   Steven J. Brock ("Brock"), because of the firms's

10  screening methods.  (<u>Id.</u> at 13; Brock Decl. at ¶¶ 2, 14,

11  16, 19, 20, 24-27.)

12

13         In <u>Rosenfeld Construction Co. v. Superior Court</u>, 235

14  Cal. App. 3d 566, 573 (1991), the California Court of

15  Appeal held that "knowledge obtained by one member of a

16  firm of lawyers is imputed to all the other members."

17  Moreover, the California Supreme Court has indicated the

18  presumption of shared confidences in this context is not

19  rebuttable.  <u>See</u> <u>Flatt</u>, 9 Cal. 4th at 283-84 ("[W]here an

20  attorney is disqualified because he formerly represented

21  and therefore possesses confidential information

22  regarding the adverse party in the current litigation,

23  vicarious disqualification of the entire firm is

24  compelled as a matter of law.") (quoting <u>Henriksen v.</u>

25  <u>Great Am. Sav. & Loan</u>, 11 Cal. App. 4th 109, 117

26  ///

27  ///

28

(1992)).[2]  Accordingly, knowledge and confidences
obtained by the associates who represented Libby in his
former case are imputed to the entire Lackie firm.

Given the factual and legal similarity between
Libby's 2003 case and Holm's present case, a presumption
arises that the law firm "possesses confidential
information about [Libby] which would be compromised if
[the firm] were allowed to take an adverse position after
the representation ended."  <u>Styles v. Mumbert</u>, 164 Cal.
App. 4th 1163, 1167 (2008); <u>see</u> <u>also</u> <u>Fox Searchlight
Pictures, Inc. v. Paladino</u>, 89 Cal. App. 4th 294, 300
(2001).

That Brock did not work at Lackie until after the
departure of the attorneys who had previously represented
Libby is immaterial.  The law firm had an imputed
conflict by nature of its 2003 representation of Libby;

_____

     [2] The cases Lackie cites do not support a contrary
conclusion.  (<u>See</u> Opp'n at 13-14 (citing cases).)

     In <u>San Gabriel Basin Water Quality Authority v.
Aerojet-General Corp.</u>, the court reasoned that "[i]n
cases where the disqualification request is not based on
an attorney-client relationship . . . . the better
approach is to examine the circumstances of each case."
105 F. Supp. 2d 1095, 1103 (C.D. Cal. 2000) (citations
and quotation marks omitted).  That case, however,
confirmed that "[v]icarious disqualification of a firm is
required [] where an attorney is disqualified because he
represented the adverse party."  <u>See</u> <u>id.</u>

     Similarly, the court in <u>Adams v. Aerojet-General
Corp.</u>, did not question this rule.  <u>See</u> 86 Cal. App. 4th
1324, 1333 (2001).

that imputed conflict did not dissolve once the lawyers who personally had performed the work left the firm.[3] Since Lackie's 2003 representation of Libby and its current representation of Holm are substantially related factually and legally, the Court presumes the firm was privy to confidential information[4] and must be disqualified; by nature of Brock joining Lackie, he too is disqualified as a member of the firm, from representing Holm in the present action.

///

///

///

///

---

[3] On this point, the Court finds persuasive ABA Model Rule 1.10(b), which states: "When a lawyer has terminated an association within a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless: (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and (2) any lawyer remaining in the firm has information protected by [confidentiality] rules that is material to the matter."

[4] The parties contest whether Lackie in fact received confidential information.  While the firm insists that it did not, Libby declares that he did impart such information.  Libby states in his declaration: "I consulted with attorneys Michael Morguess and Saku Ethir of th[e] [Lackie] firm.  In those consultations I provided these attorneys with confidential information concerning my employment and in particular my knowledge, understanding and involvement in the development and implementation of Barstow Police Department policies, practices, and procedures."  (Libby Decl. at ¶ 3.)  Because the Court finds a substantial relationship between the two representations, it need not resolve this question.

**C.   Canon 9 of American Bar Association's Model Code of Professional Responsibility**

Canon 9 of the American Bar Association's Model Code of Professional Responsibility states: "a lawyer should avoid even the appearance of professional impropriety." As Libby correctly points out, the Ninth Circuit has held that the violation of Canon 9 is an independent basis for disqualification.  See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 658 F.2d 1355, 1360 (1981) ("If Canon 9 were not separately enforceable, it would be stripped of its meaning and significance.").  Canon 9 violations, alone, will be grounds for disqualification when "[t]he impropriety [] affect[s] the public's view of the judicial system or the integrity of the court."  Id.

The Court finds Lackie's representation of Holm in this case gives a strong and clear "appearance of professional impropriety."  Lackie represented Libby five years ago and now has turned around and sued him on a substantially related matter.  Lackie has violated Canon 9 and this presents further evidence of grounds for disqualifying Lackie from representing Holm in this case.

///

///

///

///

**D. Prejudice to Plaintiff Holm**

   The Court is aware that disqualification of Lackie
will prejudice Plaintiff Holm to some degree.  Balancing
the equities, however, the Court must grant Libby's
motion to disqualify Lackie.


   Lackie argues that Libby delayed unnecessarily in
bringing this Motion.  (See Opp'n at 5-7.)  The Court
will deny disqualification motions brought for purely
strategic purposes to dely the litigation, harass the
opposing party, or pressure a more favorable settlement.
See H.F. Ahmanson & Co., 229 Cal. App. 3d at 1454; River
West, Inc. v. Nickel, 188 Cal. App. 3d 1297, 1308-09
(1987) (undue delay in bringing disqualification motion
may foreclose former's client's claim of conflict of
interest).  In evaluating the effect, if any, of a
party's delay in bringing a motion to disqualify, a court
considers when the client obtained knowledge of the
conflict.  See River West, Inc., 188 Cal. App. 3d at
1309, 1311.


   The Court finds Lackie's argument unpersuasive.  Holm
filed this action on February 29, 2008 and Libby's
counsel, Mr. Meneses ("Meneses"), first raised the
subject of a possible conflict of interest with
Plaintiff's counsel on May 21, 2008.  (See Reply at 2.)
According to Meneses' declaration, he first learned of

the potential conflict of interest from his client on May
20, 2008.  (<u>See</u> Meneses Reply Decl. at ¶ 7.)  From May
until July, counsel met and conferred regarding the
conflict of interest.[5]  Meneses filed his motion on
August 12, 2008.

Meneses did not unduly delay before bringing the
disqualification motion.  In fact, after continuous
communications with Lackie regarding the issue, Libby's
counsel appears to have put off filing his motion out of
professional courtesy.  (<u>Id.</u> at ¶ 13 ("I told Mr. Brock
in my email that because of his vacation plans, I would
attempt to accommodate him by not setting the hearing on
the motion to disqualify at a time where he would be
unavailable to either prepare an opposition or attend the
hearing.").)  Thus, Lackie's argument that Libby delayed
filing his disqualification motion as some sort of
gamesmanship is disingenuous.

In light of the substantial relationship between the
two representations; the fact that Mr. Meneses did not
delay bringing his motion to disqualify; the fact that
Lackie did not obtain a waiver despite Rule 3-310(E); and
the harm that will result to Libby if Lackie is not

---

[5] Apparently, there was a forty day delay between
Meneses's request for a copy of Libby's 2003 complaint
and his receipt of said complaint, due to the file being
misplaced.  (<u>See</u> Reply at 3; Meneses Reply Decl. at ¶ 9.)

disqualified, the Court finds disqualification is
appropriate here.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Libby's
Motion to Disqualify Lackie.  Lackie is directed to cease
all representation of Plaintiff and to turn over all
files relating to the prosecution of Plaintiff's action.

**IT IS SO ORDERED.**

Dated: <u>September 16, 2008</u>    _____
                                      VIRGINIA A. PHILLIPS
                                      United States District Judge

21